Miles & Co. *et al. vs.* Peabody, administrator.

1. Where questions of advancements to heirs at law of a deceased, and the amount due to each, and the claims of the creditors of the estate and one of the heirs, by attachment and otherwise, and their priorities, all had to be determined before an administrator could move safely in disposing of the estate, a bill by him against the heirs and creditors for direction and distribution was not without equity.

2. A claim by one not a lawyer or counsel for an administratrix, for clerical assistance to her in making out her returns, is not to be allowed out of the estate of the deceased. The law contemplates that such duties as ordinarily devolve on the administratrix herself will be performed by her; if she needs assistance, she should pay for it out of her perquisites. Especially is such claim not to be allowed when made by one as heir at law of the person rendering such assistance, and not as his administrator.

3. While generally a life tenant should provide means during her life for her own burial, and the remainder would not be technically chargeable with the expenses thereof, yet where a husband left by will a life estate to his wife, with remainder over, and the reasonable construction of the legacy, from its liberal provisions for her, would indicate that the husband intended that she should live comfortably and be buried decently, expenses necessary therefor will be allowed out of the estate as superior to the claims of remainder-men or their creditors.

4. Costs due the ordinary in the administration of the estate are a proper charge thereon, to be paid before distribution among the legatees, or before the claims of their creditors can take the property.

5. Where one of the children of a decedent furnished a wagon to the administratrix, who was his mother, for the use of the estate, and it was so used, an heir who assented to such an arrangement, would be estopped from objecting to the payment of the debt so contracted, and his creditors seeking to subject his distributive share of the

estate would only be subrogated to his rights, and would likewise be estopped.

6. One creditor of an heir of a decedent took out letters of administration and sought to secure payment of the indebtedness, which was in the form of a judgment from the state of Alabama. Other creditors levied attachments, by garnishments, upon the undistributed share of the common debtor in the hands of the administrator. He filed a bill for direction, etc.:

*Held,* that there was no error in ordering the claims to be paid *pro rata,* there not being enough to pay all. Interference with the regular course of administration will not be encouraged, if allowed at all, by giving preference to creditors who attach the share of a distributee in the hands of the administator before the administration has been completed.

Equity. Administrators and executors. Estates. Wills. Husband and wife. Contracts. Before Judge CRAWFORD. Muscogee Superior Court. May Term, 1879.

John R. Dawson died testate in 1859. His will provided, among other things, that certain described property should be kept together, except so far as was necessary to divide it for the purposes named ; that his wife and children should be amply and liberally supported out of the proceeds and profits thereof, and the children educated ; that as each child should become of age or marry, the executor should give him or her such portion of the estate as he might deem proper, approximating the distributive share of such child, but reserving a final settlement until the youngest child should become of age or marry; that in making such advancements the executor should reserve a proper and liberal support for the wife during her natural life, and, should she re-marry, she should have a child's part.

The brother of testator was appointed his executor. Testator left a widow, Jane A. Dawson, and five children. The executor resigned, and the widow was appointed administratrix with the will annexed. Two of the children died, one leaving minor heirs, the other childless. Various advancements were made to the children, and at the opening of this litigation nothing seems to have been

due to any of them except two, Mrs. Gray and John F. Dawson. The administratrix died, and McGough was appointed administrator *de bonis non*. The land of the deceased having been sold, and the money being ready for final distribution, the administrator filed this bill for direction, etc. The heirs, certain creditors of the estate, and creditors of John F. Dawson were made parties.

Those claiming as creditors of the estate, to be paid before distribution, were as follows :

(1.) Mary Johnson, as heir at law of her deceased father, claimed that $50.00 should be paid to her, which was due to her father for services rendered the administratrix in making out her returns.

(2.) B. F. Coleman claimed $30.00 for walling up a vault in which the widow of testator was buried, she having employed him to do such work before her death.

(3.) The ordinary claimed $30.00 for costs due him in connection with the administration of the estate.

(4.) Henry R. Dawson, one of testator's children, to whom advancements had been made covering about all of his share, claimed that the administratrix had agreed with him that if he would let her have a wagon and pair of mules for the use of estate he should share in the final distribution equally with the others, they agreeing thereto ; that the wagon and mules had been turned over to her, and used for the benefit of the estate.

[On the trial the evidence failed to show an agreement by the other distributees to have Henry R. share with them, but did show knowledge by them of the use of the wagon and mules furnished by him to the estate, and acquiescence therein. Also, that in allowing advancements etc. returned by the administratrix, the ordinary had held the value of the property to be a valid claim, for which Henry R. should receive credit in the final settlement. Their value was proved on this trial to be $350.00].

(5). Thornton & Grimes had a claim for attorneys' fees, which was not contested.

V 64—46

When the question of payment of these claims should be determined, no further contest was made in regard to the share of Mrs. Gray. For the share of John F. Dawson, three of his creditors were contesting, each claiming priority of lien on the fund:

1. McGough & Co., of which firm the administrator *de bonis non* was a member, claimed by virtue of a judgment rendered in Alabama on a promissory note.

2, 3. Miles & Co. and Fraser & Co. claimed by virtue of attachments against John F. Dawson (he being a non-resident) which had been levied by garnishments served on the administrator.

The court rejected the claim of Mary Johnson, and allowed the claims of Coleman, the ordinary, Henry R. Dawson and Thornton & Grimes. The distributive share of John F. Dawson not then being sufficient to pay off the other claims, the court ordered it to be distributed to them *pro rata*. Miles & Co. and Mary Johnson, excepted.

J. T. NORMAN; J. M. RUSSELL; THOMAS & COLEMAN, for plaintiffs in error.

PEABODY & BRANNON; J. F. POU; THORNTON & GRIMES, for defendant.

JACKSON, Justice.

McGough, as administrator *de bonis non* with the will annexed on the estate of John R. Dawson, brought a bill for direction and distribution against the heirs and creditors of the estate of decedent, and the creditors of one of the heirs, John F. Dawson, who had some of them served process of attachment by garnishing the administrator, John F. Dawson being a non-resident of the state of Georgia. The entire case, fact and law, was submitted to the chancellor without a jury by consent, he made a full decree thereon, and to that decree Mary Johnson, as one of the creditors of the estate, and Miles & Co., as attaching credi-

tors of John F. Dawson, excepted, and their exceptions bring the case before us.   McGough died pending the case here, and Peabody was made a party as administrator *de bonis non cum testamento annexo* in his stead.

1. Some objection was made to the equity of the bill, but a mere statement of the facts will show that the equity of it abounds.   Questions of advancements among the heirs at law of the deceased and the amount due to each, and claims of creditors of the estate proper and their validity, had to be adjusted, and then claims of the attaching creditors and other creditors of one of the heirs and their priorities, had to be ascertained and adjudicated before the administrator could move safely in disposing of the estate.

So that, to use the figure of my late able associate, Judge Bleckley, the cause revolved around two centres—the one, John R. Dawson, deceased, whose heirs and creditors were contesting for the spoils which were heaped in that greater centre, and attracted them; and the other, John F. Dawson, an insolvent heir, about whose smaller pile his creditors hovered, drawn thither by a like attractive force.   To divide either pile so as not to involve the administrator in danger and loss, the interposition of chancery might well be invoked, and to distribute both according to law made the task more difficult, and necessitated the aid of equity, on its general jurisdiction of all matters of trusts, as well as that which arises from a state of things which would multiply suits and waste both heaps in expenses and costs. The case therefore actually abounds in equity, and was rightfully held in court and adjudicated so as to settle the conflicting interests.

First let us see how the estate was divided among the creditors, and after they were paid, among the heirs, and next how the share of John F. Dawson was divided among his creditors.

2. The claim of Mary Johnson, who petitioned for the allowance of a debt due to her father from the estate of deceased, was rejected, and she excepted thereto.   She

comes in as the heir at law of her father, who rendered service to the widow in making out returns for her as former administratrix, but the father of Miss Johnson was not of counsel for the administratrix, nor was he a lawyer; and if Miss Johnson had been before the court as administratrix on her father's estate, we hardly think she could have recovered for the mere administrative and clerical duty of making out returns. The administratrix should have paid these charges out of her perquisites or per centum of commissions, given her for this among other purposes. We do not think that section 2546 of our Code, which allowed the administratrix to employ labor or service for the benefit of the estate, was intended to apply to any duty which devolved ordinarily upon the administratrix herself. It is codified from the act of 1865-6, and has reference mainly to laborers on farms, and the like service—certainly not to that labor or service which the law devolved on the administrator himself. Besides, Mary Johnson had no standing in court, and a decree for her would not have barred a suit for the same matter if administration were taken out on her father's estate; nor is it claimed that this claim was ever assigned to her to prosecute under section 2536 of our Code by any regular administrator.

3. The court allowed a charge of thirty dollars for a vault in which to inter the remains of Mrs. Dawson, the life tenant of the property, the proceeds of which, sold after her death, were being distributed, and to this ruling Miles & Co. excepted. Whilst it is true that the life estate of Mrs. Dawson terminated the moment that the breath left her body, and then John F. Dawson, one of the children and heirs of her husband, had the right to enter in remainder; yet, as that husband by will had provided for her liberally, intending her to live as his widow should, and to pass to the death-bed decently, as the relict of a man of property, and as this money was spent or labor expended to give her decent interment, we cannot think that the will of the testator was violated when her burial expenses were

paid out of the proceeds of that property which until her death she had enjoyed. Whilst as a general rule the life tenant should unquestionably provide while living out of the rents, issues and profits for burial, we do not think that the rule should embrace a case where the entire distribution turns on the will of the testator, and that will should be construed, if possible, so as to carry into effect his intentions, and it is no strain to say that his intentions were not only that his widow should live comfortably, but be buried decently. It certainly would affront all ideas of civilization, to say nothing of Christianity, to allow heirs at law, who become entitled to the remainder when the mother dies, to debar her from decent burial, if she did not chance to lay up enough from her income from the life tenancy to insure it; and we do not believe that creditors of such heirs in such cases should be permitted to occupy any ground on which their debtor could not fairly and uprightly stand. Inherently, in such a case, burial of the body of the life tenant adheres to, and is part of, the legacy for life given by husband to wife.

4. The ordinary was entitled to his fees and they were properly awarded to him.

5. Payment to Henry R. Dawson was properly awarded for a wagon and team furnished the estate during the administration of the mother, and to which the heirs at law assented. John F. Dawson having assented thereto, he cannot now complain that this amount was allowed to his brother for a wagon and team actually worn out in the service of the common estate, and thus increasing its income and enhancing its value. The creditors of John F. Dawson must stand in his shoes and take that only which he could legally claim, unless there had been some charge of fraud or collusion between him and his brother, of which there is no pretense. As he is estopped from objecting to that debt which was incurred by his mother when administratrix *de bonis non* by his acquiescence, his creditors are also estopped in so far as they seek to collect their claim out of his undistributed share of his father's estate.

6. The only heirs entitled to a share, after paying creditors, are Mrs. Gray and John F. Dawson, the insolvent heir, whose inheritance is in controversy among his creditors; Mrs. Gray's share was awarded to her, about which there is no controversy ; leaving the share of John F. Dawson to be disposed of.   Three creditors contended for payment out of it ; there was not enough to pay all, and the chancellor directed that each be paid *pro rata* ; and to this decree Miles & Co. excepted.

There is no controversy that all are honest and *bona fide* creditors of John F. Dawson.   McGough & Co., of which firm the late administrator was a member, claimed a debt on a note sued to judgment in Alabama, and the bill prayed that the administrator be allowed to retain enough to pay that debt; Frazer & Co. and Miles & Co. claimed by virtue of attachments levied by summons of garnishment on the administrator, McGough ; and the questions to be decided by the chancellor were, who had priority, if anybody ? and how should the fund be distributed ?   The chancellor ignored the Alabama judgment, as entitled to priority, properly perhaps, because it was not a judgment in this state, and had no lien here ; it was conclusive evidence of debt, and that is as much as can well be claimed for it.   However that may be, McGough & Co. do not except.

The chancellor ignored, also, the claim of Miles & Co., on their attachment, because it had not been prosecuted to judgment ; the administrator had arrested it by this bill; and in equity it had no preference over McGough & Co., because that firm could not well garnishee one of themselves as administrator of the estate.   The fact is that the administrator, or the firm of which he was a member, were as vigilant as Miles & Co.—more so, indeed, as one of them administered to secure their debt, before Miles & Co. served the garnishment upon the administrator, and thereby attached the fund.   Shall one creditor, who holds the property of a common debtor, turn it over to pay another creditor of equal merit even, at his own loss ?   Will equity make him do so ?   We can hardly think so.

But it may be said that there was another attachment levied by Miles & Co. on the land. the proceeds of which are for distribution, or on the interest of John F. Dawson therein, and that was reduced to judgment and has priority. It is enough to reply that such attachment is not set up in the pleadings—neither in the bill nor the answer of Miles & Co. Even if it had been, its lien was not lost by the administrator's sale, if, indeed, it had any; because that sale only divests the lien of judgments not levied, and attachments would perhaps stand on the same footing if levied, and afterwards regularly reduced to judgment, 58 *Ga.*, 451. But apart from all this, the regular administration of an estate will not be interfered with, or interference therewith will not be encouraged, if allowed at all, by giving preference to attachments of the undistributed shares of the heirs at law—resting in *quasi* remainders, after all debts are paid. Even the process of garnishment is allowed to issue only with caution and on terms, Code, §§3555, 3556, and within twelve months from administration, not at all. 28 *Ga.*, 366.

Looking at the case in all its bearings, we cannot see how Miles & Co. have been hurt by the decree which divided the share of John F. Dawson *pro rata* among his creditors; and taking the decree altogether, we think that it accords with the equities of the case as made by the record.

Judgment affirmed.