JONES *et al. v.* NISBET, executor, *et al.*

1. The exceptions contained in the bill of exceptions are sufficient to raise the question as to whether the court erred in overruling the plaintiff's exceptions to the auditor's report.
2. There was no error in overruling the general demurrer to the cross-petition and in overruling the motion to dismiss the entire proceedings. The cross-petition was maintainable under the provisions of the Civil Code, § 4597, relating to petitions for direction, and under § 5419, relating to multiplicity of suits as a ground for consolidation, and under § 5469, par. 2, relating to bills of peace and multiplicity of suits.
3. In view of the rulings just stated, concerning the various heads of equity jurisdiction under which the cross-petition in this case is maintainable, there is no merit in the special demurrers which were overruled by the auditor.
4. The auditor's findings of fact were authorized by the evidence.
5. The court did not err in overruling the exceptions of law and fact.
6. The court passed an order allowing a fee of $1000 to the auditor for his services, and directing that certain other items of costs be taxed against the plaintiffs. It appears from the exceptions pendente lite, upon which error is duly assigned, that this judgment for the auditor's fee and certain other items was rendered at chambers, "without notice to plaintiffs or opportunity to appear and oppose the same." Plaintiffs should have had notice and opportunity to oppose and contest this fee, especially as to the amount thereof; and it was error to fix this fee without allowing plaintiffs such opportunity.

No. 6070. FEBRUARY 16, 1928.

Equitable petition. Before Judge Pomeroy. Fulton superior court. April 19, 1927.

*Hewlett & Dennis, Anderson & Reynolds, J. S. Manning,* and *F. O. Ray,* for plaintiffs.

*Philip Weltner, Little, Powell, Smith & Goldstein,* and *K. C. Royall,* for defendants.

Actions, 1 C. J. p. 1128, n. 57.
Appeal and Error, 3 C. J. p. 950, n. 98; 4 C. J. p. 1130, n. 75.
Equity, 21 C. J. p. 82, n. 73.
References, 34 Cyc. p. 894, n. 8.

BECK, P. J. Albert C. Jones and others brought an equitable petition against John Lord Nisbet, as executor of the last will and testament of Mrs. Cora B. Williams, et al. The allegations of the petition disclose that the plaintiffs are the kinspeople of Mrs. Williams, who died testate on or about March 22, 1924, and whose entire estate, with minor exceptions, was left to the Jesse Parker Williams Hospital, to be thereafter incorporated; and that this estate was derived from property left to Mrs. Williams by her deceased husband, Jesse Parker Williams, who died intestate on or about August 5, 1913. The basis of the action against the executor of Mrs. Williams was an agreement alleged to have taken place between Jesse Parker Williams and his wife, whereby she promised that if he would refrain from making a will and would thus allow his estate to pass to her, there being no children, she would take possession thereof for the purpose of carrying out his known and expressed intention and his wishes, to wit: that a one-half undivided interest was to go to his own kin who would have been his heirs at law except for his marriage, and a one-half undivided interest to those who at his wife's death would have been her heirs at law, except her two sisters, subject to a reasonable charge for the support of each of said sisters during their natural lives. This agreement, it is alleged, was repudiated by the wife, who made no provision whatsoever for those who would have been her heirs at law, except for her two sisters. The plaintiffs prayed that the executor be required to carry out and perform the trust, promise, agreement, and contract of his intestate, and that title to half of the property of Jesse Parker Williams coming into the hands of the executor be decreed to be in the plaintiffs, subject to certain charges; with an alternative prayer for damages in the event the executor is unable to do so. The defendants filed an answer and amendments. A motion was made to refer the case to an auditor. Pending this motion the executor filed a cross-petition in which he distinctly denied the validity of the claims of plaintiffs, but nevertheless he asked direction of the court with respect to the same. The auditor assigned the case for a hearing on January 1, 1927. Before this time the plaintiffs took an order dismissing the case. On the day set for the hearing it was insisted by the executor that under his cross-petition he had a right to proceed with the hearing for the purpose of adjudicating the validity of the claims of

the plaintiffs. A demurrer to this cross-petition was interposed, in which it was contended that it set forth no cause of action; which demurrer was overruled. The plaintiffs then moved that the auditor dismiss the entire case, which motion was overruled; and the cause proceeded upon the cross-petition. The auditor found that the plaintiffs had no claims against the estate of Cora B. Williams. Exceptions to this report were filed, and, after argument before the judge of the superior court, the cross-petition was amended. By this amendment it was claimed that the defendant executor was entitled to maintain the cross-petition as a bill of peace. The court overruled the exceptions of the plaintiffs, and the auditor's report was made the judgment and decree of the superior court. The plaintiffs filed a bill of exceptions and brought the case to this court for review.

1. Counsel for defendants insist that no question is presented for decision, except the question as to the auditor's fee. This position taken in argument is based upon the contention that the action of the court below in overruling the exceptions to the auditor's report is not excepted to "in any way in the bill of exceptions;" that the sole exception in the bill of exceptions is to the final decree of the superior-court judge, by which the findings of the auditor are made the findings of the court and decree rendered in accordance therewith. The portion of the bill of exceptions involved in the consideration of the question is as follows: "To said rulings and findings of the auditor the plaintiffs filed their exceptions, both of law and fact, which exceptions came on to be heard in due course, before one of the judges of the Fulton superior court; and thereafter, to wit, on the 19th day of April, 1927, the court passed an order and decree making the findings and conclusions of the auditor, both of fact and of law, as the findings and conclusions of the court, and a final decree was therein entered by the court, in which said cause was adjudicated adversely to the plaintiffs. To this ruling, finding, and decree the plaintiffs excepted, now except, and assign the same as error upon the ground that each and all of said findings and said decree was contrary to law and against the principles of justice and equity." It is insisted by defendants that the exception thus stated has reference only to the ruling making the findings of the auditor the judgment of the court and the decree rendered in accordance

with the findings of the auditor, and that there is nothing in the bill of exceptions showing that the plaintiffs are excepting to the action of the court in overruling their exceptions to the auditor's report, and that consequently no question is presented to this court as to whether the findings of the auditor are correct. With this contention of the defendants we can not agree. When in the bill of exceptions it is recited that the court passed an order making the findings and conclusions of the auditor, both of fact and law, the judgment of the court, that a final decree was entered in which the cause was adjudicated adversely to the plaintiffs, and that to this ruling and judgment the plaintiffs excepted and assign the same as error upon the ground that "each and all of said findings and said decree was contrary to law and against the principles of justice and equity," this is a sufficient exception to the action of the court in overruling the exceptions to the auditor's report.

2. The auditor properly overruled the demurrer to the cross-petition, based upon the contention that it set forth no cause of action, and properly overruled the plaintiffs' motion to dismiss the entire case. It is conceded by the defendants that no subject can be made the basis of an answer in the nature of a cross-petition unless it would also have justified an independent original petition in equity; and it is contended that the matter set out in the cross-petition in the present case, and the relief prayed for, would have justified an independent original proceeding in equity by the executor, if he could have obtained jurisdiction of the plaintiffs (who would in that event be defendants to such original proceeding); and the defendants also claim that the only substantial advantage to which the executor is entitled under the law he has obtained by bringing the case in the nature of a cross-petition, to wit, that all questions of service of his proceedings are eliminated, as the non-residents (who are the plaintiffs and consequently defendants to the answer in the nature of a cross-petition) are before the court, having voluntarily submitted themselves to its jurisdiction, and the cross-petition having been filed before any attempts on their part to withdraw. Service of the cross-petition was acknowledged by counsel for the plaintiffs. There can be no question that the matter set up by the answer in the nature of a cross-petition is germane to the controversy disclosed and initiated by the original

suit. The filing and maintaining of an answer in the nature of a cross-petition comes under more than one head of equity jurisdiction, which would also have authorized and made maintainable an original suit in equity by the executor for the purposes disclosed by the cross-petition. In the first place, we are of the opinion that the executor was entitled to maintain this cross-petition for direction, under the circumstances disclosed by the present case. Section 4597 of the Civil Code reads as follows: "In cases of difficulty in construing wills, or in distributing estates, in ascertaining the persons entitled, or in determining under what law property should be divided, the representative may ask the direction of the court, but not on imaginary difficulties or from excessive caution." In the present case the plaintiffs non-resident were asserting that a large portion of the estate of which Nisbet was executor should go to them under some agreement which, it was alleged, had been made and entered into between Williams and his wife, whereby she promised that if he would refrain from making a will and would thus allow his estate to pass to her, there being no children, she would take possession thereof for the purpose of carrying out his known, expressed intention and wishes, to wit: that a one-half undivided interest was to go to his own kin who would have been his heirs at law except for his marriage, and a one-half undivided interest to those who at his wife's death would have been her heirs at law, except her two sisters, subject to a reasonable charge for the support of each of said sisters during their lives. While the allegations are not sufficient to show that an express trust was created by this agreement between the husband and the wife, or a resulting trust, it would seem that the plaintiffs in the original case were seeking to show that there was a trust created, of which they were the beneficiaries. Paragraphs 29 and 30 of the petition are as follows:

"29. That Jesse P. Williams for many years prior to his death had intended, and did at the time of his death intend, that his wife should have the possession and management of the property of which he died owner during her natural life; and he further intended that during his wife's lifetime she and her two sisters should be supported in a reasonable manner, agreeable with their social position and standards of living; that upon his wife's death the said estate, diminished only by the charges aforemen-

tioned, should go as follows: a one-half undivided interest therein to those of his own kin who would have been his heirs at law except for his marriage, and a one-half undivided interest therein to those who at his wife's death would have been her heirs at law, except for her two sisters, subject to a reasonable charge for the support of each of said sisters during her natural life.

"30. That said Jesse P. Williams made known his said intentions to his wife, Cora B. Williams, and expressed to her his further intention to make a will carrying out same, but his said wife promised, agreed, and assured him that if he would refrain from so doing she would take the possession and management of the property of which he died owner, during her natural life, for the purpose of carrying out his said intention, and would support herself and her two sisters therefrom according to his expressed intention, and she would make a will disposing of the remainder of same at her death in accordance with his said intentions as set forth more fully in the preceding paragraph." And there are allegations in the petition which would seem to show a contract to make a will on the part of Mrs. Cora B. Williams, upon which contract plaintiffs rely to establish a claim to a large part of the estate.

"32. That at the time of the death of said Jesse P. Williams his kinspeople who would have been his heirs had he not married, and the kinspeople of Mrs. Cora B. Williams, referred to hereinafter in this paragraph, knew of his intentions aforesaid, and it was firmly believed by his said kinspeople and by said kinspeople of Mrs. Cora B. Williams that he had carried out and made effective his said intentions by leaving a will; and consequently when it became known to them that administration upon the estate of Jesse P. Williams was being had upon the theory that he had died intestate, it becoming known to them at the same time that his said widow was claiming absolute ownership of all his property, said kinspeople of Jesse P. Williams and the kinspeople of Mrs. Cora B. Williams, exclusive of her sisters, conferred with one another and sought and gathered information substantiating their beliefs, consulted and employed attorneys, and were perfecting an organization to ascertain the whereabouts of such a will, to establish its existence, and to enforce their rights to the estate of said deceased, Jesse P. Williams, contending and insisting that said

deceased had not died intestate, but had left a will and had therein made provision for them, in accordance with his intention aforesaid.

"33. That thereafter, and by reason of the facts set out in paragraph 32 above, in December of 1913, the exact date of the month being unknown, the said Cora B. Williams, knowing of these contentions and activity of her said kinspeople, exclusive of her said sisters, and of the said kinspeople of said Jesse·P. Williams, wrote a letter in her own handwriting from her home at 478 Peachtree Street, Atlanta, Ga., to Mrs. Elizabeth Williams Parks, a sister of said Jesse P. Williams, at her home near Mount Olive, in Wayne County, North Carolina, which letter was received by addressee in due course of mail.

"34. That said letter in substance stated that the writer thereof knew of the activities and contentions of those who claimed that her husband had made a will; that her husband's intentions were that she should have the possession and management of the estate during her natural life, and that at her death the same would be divided one half to those of his own kindred who would have been his heirs except for his wife, and the other one half to those who at his wife's death would have been her heirs, except for her two sisters, subject to a reasonable charge for the support of each of said sisters during her natural life; that her husband had expressed an intention to make a will carrying out these intentions, but that he had not done so, and that she would take and hold his property for the purpose of carrying them out, providing in her will for the division of his property in accordance therewith, and because he trusted her to do so as she had promised; that she was anxious that there be no hard feeling, contentions, or litigation about the matter, and that there be no publicity given the matter; that she was holding the estate for the purpose of carrying out her husband's said intentions; that she had all along intended to carry them out and that she would carry them out explicitly if they would give her an opportunity to do so; that the writer thereof wanted Mrs. Parks to acquaint all people concerned with the contents of her letter; that the writer thereof enclosed a check for $50 as a Christmas present, because Jesse P. Williams had always sent Mrs. Parks such a check at Christmas time, and she, the said Cora B. Williams, wanted to continue the custom.

"35.  That the said Cora B. Williams died without having made and executed any will carrying out her promise and contract as aforesaid."

And the first two paragraphs of the prayers of the petition are as follows:  "(a) That said John L. Nisbet, as executor aforesaid, be required to fully carry out, perform, and put into effect the said trust promises, agreement, and contract of the said Cora B. Williams in so far as the same related to your petitioners or to others who may become parties to this suit.  (b) That the title to one half of the property of the said Jesse P. Williams, coming into the hands of the said Cora B. Williams, subject to the charges aforementioned in favor of her sisters, be declared to be in your petitioners, and the class represented by them, as beneficiaries of said agreement, and that a decree be entered setting forth the respective rights and interests of all parties in said property in so far as same concerns your petitioners and other interested parties to this suit."

We are of the opinion that in view of the paragraphs which we have quoted, taken in connection with other allegations in the petition, the defendants could maintain an equitable suit for direction under section 4597 of the Code.  And this is made clearer when we consider the situation and condition of the estate in the hands of the executor and the situation in which the executor found himself when the plaintiffs in the case solemnly asserted their rights by filing this suit in the superior court.  The scheme created by the will of Mrs. Williams, after certain minor legacies, provided for the support and maintenance of her sisters for life and that the general residuum of her estate was to be used to create and endow a hospital at some point in Georgia, for the special use of women and children, as a charitable institution.  The bulk of the estate is thus left to a designated type of charity, but no particular charitable corporation is nominated as legatee by the will.  The testamentary scheme directs that when the administration is ripe therefor (this time having now arrived) the executor is to cause to be organized a charitable hospital for women in Georgia, to be named after the late husband of the testatrix and as a memorial to him.  While the facts in the case of *Miles* v. *Peabody,* 64 *Ga.* 729, are not identical with the facts in this case, the language in a part of the decision there rendered is applicable here.  It

53

was said by Mr. Justice Jackson: "So that, to use the figure of my late able associate, Judge Bleckley, the cause revolved around two centres—the one, John R. Dawson, deceased, whose heirs and creditors were contesting for the spoils which were heaped in that greater centre, and attracted them; and the other, John F. Dawson, an insolvent heir, about whose smaller pile his creditors hovered, drawn thither by a like attractive force. To divide either pile so as not to involve the administrator in danger and loss, the interposition of chancery might well be invoked, and to distribute both according to law made the task more difficult, and necessitated the aid of equity, on its general jurisdiction of all matters of trusts, as well as that which arises from a state of things which would multiply suits and waste both heaps in expenses and costs. The case therefore actually abounds in equity, and was rightfully held in court and adjudicated so as to settle the conflicting interests." And in *Mechanics &c. Bank* v. *Harrison,* 68 *Ga.* 463, it was said: "To divide or administer this estate among these contesting claimants, so as not to involve this executor in danger and loss, the interposition of chancery, we think, might well be invoked. To distribute both according to law makes the task more difficult, and necessitates the aid of equity on its general jurisdiction of all matters of trusts, as well as that which arises from a state of things which would multiply suits, and waste the estate in expenses and costs." See also *Gaines* v. *Gaines,* 116 *Ga.* 475 (42 S. E. 763); *Cooper* v. *Reeves,* 161 *Ga.* 232 (131 S. E. 63). In Redfearn on Wills, 234, it is said: "In Georgia an executor is considered a trustee in a limited sense. He therefore has easy admittance to the courts of equity for direction and advice concerning the trust estate. He not only may apply to equity for a construction of the will or parts thereof, but he also may apply for the purpose of having determined the nature and extent of the powers conferred on him by the will and for the purpose of determining the interests of the beneficiaries and the rights of creditors."

We are further of the opinion that the cross-petition in this case could be maintained under the provisions of section 5419 of the Civil Code, which provides that "Where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine

the whole matter in one action;" and under a somewhat similar rule embraced in § 5469 (2), which provides that equity will entertain a bill of peace "to avoid a multiplicity of suits, by establishing a right, in favor of or against several persons, which is likely to be the subject of legal controversy, or in other similar cases."

While this cross-petition might not be maintainable as a bill of interpleader, we think it falls within the principles ruled in *McKinney* v. *Daniels,* 135 *Ga.* 157 (68 S. E. 1095). In the decision in that case is quoted and approved the following from Pomeroy's Equity Jurisprudence: "A bill in the nature of a bill of interpleader is one in which the complainant seeks some relief of an equitable nature concerning the fund or other subject-matter in dispute, in addition to the interpleader of conflicting claimants. The complainant is not required, as in strict interpleader, to be an indifferent stakeholder, without interest in the subject-matter. It is essential, however, that the facts on which he relies entitle him to equitable, as distinguished from legal, relief; he is not permitted, under the guise of a bill in equity, to litigate a purely legal claim or interest in the subject-matter." See also *Ben Hill County* v. *Mass. Bonding &c. Co.,* 144 *Ga.* 325 (87 S. E. 15). Besides these heads of equity jurisdiction under which defendant could maintain this cross-petition, we are of the opinion that in view of the allegations in the petition and in the cross-petition defendant could maintain the cross-petition under the provisions of §§ 5466 and 5468 of the Code; that is, as a proceeding quia timet, or to remove a cloud upon the title to the property which the defendant is to administer. It follows from what we have said that the court did not err in overruling the general demurrer to the cross-petition, or in refusing to dismiss the entire proceedings upon motion.

3-5. It is unnecessary to elaborate the rulings made in the third, fourth, and fifth headnotes.

6. The judgment of the court in this case will be affirmed, with direction that the court pass upon the allowance of the auditor's fee and the amount thereof after due notice to counsel for both sides. And in view of the ruling in headnote 6, that it was error to fix the fee of the auditor without notice to the plain-

tiffs, the cost of bringing this proceeding to this court is taxed against the defendants in error.

*Judgment affirmed, with direction. All the Justices concur.*

HINES, J., concurs in the result.